302 So.2d 631 (1974)
Charles and Betty BARBIN, Plaintiffs-Appellees,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant.
No. 4688.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1974.
Rehearing Denied November 20, 1974.
Writ Granted December 20, 1974.
*632 Dale, Owen, Richardson, Taylor & Mathews by Daniel R. Atkinson, Baton Rouge, for defendant-appellant.
Riddle & Bennett by John T. Bennett, Marksville, for plaintiffs-appellees.
Before FRUGÉ, MILLER and WATSON, JJ.
MILLER, Judge.
Defendant United States Fidelity & Guaranty Company appeals the judgment allowing plaintiffs Charles and Betty Barbin to "stack" their uninsured motorist coverage provided under one policy covering plaintiffs' two automobiles. We reverse.
This case was consolidated for trial and appeal purposes with Barbin v. USF & G, 302 So.2d 634 (La.App. 3 Cir. 1974) and Konrady v. USF & G, 302 So.2d 635 (La.App. 3 Cir. 1974). Separate opinions are this day handed down in those cases.
The facts were stipulated. On July 14, 1973, at 8:30 p. m. Charles Barbin was driving his 1964 Ford automobile on Louisiana Highway 1 near Marksville. Passengers were Charles' wife Betty, his brother George Barbin and his brother's wife Nelda, and his sister Iris and her husband Donald Konrady. A negligent uninsured motorist crossed the center line of the highway causing an accident which seriously injured all occupants.
USF & G had issued a 5/10 automobile liability insurance policy to Charles covering the 1964 Ford involved in the accident. The same policy provided like coverage on a 1962 Chevrolet automobile which was not involved in the accident. The policy provided uninsured motorist or family protection in the amount of $5,000 for each person and $10,000 for each accident. A $7 premium was collected for uninsured motorist coverage on the Chevrolet and a $5 premium was collected for the Ford.
USF & G paid the $10,000 limits covering the Ford which was involved in the accident and holds a release for that coverage. Plaintiffs reserved the right and here seek the additional $10,000 of uninsured motorist coverage provided on the Chevrolet.
*633 The trial court allowed "stacking" and under the uninsured motorist protection afforded the Chevrolet awarded specific amounts to specific plaintiffs totaling $10,000.
We reverse on finding Act 137 of 1972 amended LSA-R.S. 22:1406, subd. D (the uninsured motorist statute) and other provisions in the statute eliminate "stacking" where the stacked coverage exceeds the limits of automobile liability insurance carried by the insured.
The history of "stacking" uninsured motorist's coverage is in part based on public policy considerations. Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972) held that insurance policies must conform with statutory requirements. In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), the court explained that the statute declared the public policy of the State and imposes a mandatory minimum insurance liability under uninsured motorist coverage.
The cases following Deane and Graham were discussed in Rascoe v. Wilburn, 295 So.2d 201 (La.App. 3 Cir. 1974), where it was concluded that we have made a policy decision in refusing to apply a specific exclusionary clause, a policy decision based upon the rationale of Graham and Deane. The stated policy was that insurers who have undertaken to provide uninsured motorist protection are held liable to the full extent required by the statutory minimum provisions. These public policy considerations created a burden upon insurers who have undertaken to provide uninsured motorists protection to the full extent required by the statutory minimum provisions.
Legislation on the subject has been suggested. See 33 L.L.R. 145 (1972) at page 151. Similar concerns may have brought about the change in public policy considerations reflected in the 1972 amendment providing for unlimited uninsured motorist coverage. Most importantly, the act limits this coverage so that it can not exceed the limits of automobile liability coverage carried by the insured.
We are here called upon to interpret the legislative intent and meaning of LSA-R.S. 22:1406, subd. D(1)(b), which reads:
Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured. (Emphasis added.)
Charles Barbin had only $5,000/$10,000 liability insurance coverage. No case has allowed "stacking" of liability coverage to increase the limits provided in the policy on the basis that more than one car was insured in the same policy. Barbin's liability protection provided to the public was $5,000 per person and $10,000 per accident. Under the 1972 amendment, "stacking" can not be allowed to increase the uninsured motorist protection to $10,000/$20,000, to defeat the legislative restriction stating that this coverage can "not [be] in excess of the limits of the automobile liability insurance carried by such insured." This expression of legislative intent overrides the statements of public policy expressed in the jurisprudence.
Appellee argues that our recent decision in Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App. 3 Cir. 1974) is conclusive of the issue here presented. The insured in Wilkinson was allowed to stack coverage of several cars provided in a single policy. We would follow Wilkinson except for amendments to and provisions in LSA-R.S. 22:1406, subd. D(1)(b). We distinguish Wilkinson because the accident in that case occurred and the policy was issued before the 1972 amendment. Here the accident occurred and the policy was issued after the 1972 amendment.
The trial court judgment is reversed and set aside. It is ordered adjudged and decreed *634 that defendant United States Fidelity & Guaranty Company have judgment dismissing plaintiffs' suit. Costs at trial and on appeal are taxed to plaintiffs.
Reversed and rendered.
WATSON, J., concurs, continuing to hold the view that the "limits of liability" clause prevents the stacking of coverage where more than one vehicle is insured in one policy. See my dissent, Wilkinson v. Fireman's Fund Insurance Co., La.App., 298 So.2d 915.
FRUGÉ, J., dissents and assigns reasons.
FRUGÉ, Judge (dissenting).
I respectfully dissent. The language of LSA-R.S. 22:1406(D) which is the basis of the Graham and Deane decisions has not been changed by the 1972 amendment. That amendment merely added subsection (D)(1)(b) to provide that an insurer must permit the insured to purchase the amount of uninsured motorist coverage he desired up to the limits of the liability coverage carried by him. The majority holds that this addition prevents stacking of uninsured motorist coverage because the insured cannot purchase such coverage in excess of the liability limits of his policy.
This writer is of the opinion that sub-section (D)(1)(b) was not added to limit the amount of uninsured motorist coverage that may be purchased by an insured. Rather it requires the insurer to provide uninsured motorist coverage up to the limits of the liability coverage. A greater amount of uninsured motorist coverage can still be provided. The "not in excess of" language merely limits what the insurer must provide, not what he may provide. Thus, the addition has no effect on the basis of the holdings in Graham and Deane, and I must therefore respectfully dissent.